Cases 4-14-0675. In re the marriage of Jekyll and Ronald Kessinger. For the appellant, attorney Kessinger appears. For the appellee, attorney Costello appears. Mr. Kessinger, are you ready to proceed? Yes. Okay, you may you may do so. Please report. Costello. I'm G. Ronald Kessinger. I live in Jacksonville, Illinois. I've been practicing law as of this month 49 years. I practiced law seven years in Massachusetts before I came here. But I grew up in Jacksonville, graduated from Illinois College and spent the last 42 years practicing law here. So I'm very much a local person. Regrettably, my wife filed a petition for dissolution of marriage about two years ago. She previously filed one about six years ago and that officially got dismissed. We reconciled for a while. But this last time she filed the petition for dissolution of marriage two weeks after I was suspended from the practice of law in February of 2013. I don't think it's a good time for her to do it. But obviously I earned no monies during that period of time. In any event, the issue that's really one, possibly two. The judge entered an order awarding maintenance in the amount of $3,250 a month. I assert that that was an abuse of discretion and it was against the Massachusetts way of the evidence because very clearly the evidence that's most relevant would to earnings in the future. And I don't know that the court did, but I know that the evidence presented to the judge in the year 2012 consisted of an adjusted gross income of only about $50,000. In the year 2013, when I was suspended for six months, there was an operating loss of $18,000. And in the first three months of 2014, I earned approximately adjusted gross of $3,500 per month. Now it was exactly a year ago that the trial was heard. That's why I'm presenting two years and three months. I think that's the most relevant evidence the judge should have used to decide the issue of maintenance. And no matter how you cut up the pie, there's not enough money to pay $3,250 a month. For instance, in the last three months before he made a decision, I'm only making $3,500 per month. So I say that that, I really believe the judge ignored that evidence. And it's in black and white. It wasn't disputed. My wife's attorney, who was not Mr. Costello, argued eloquently about the lavish lifestyle that we lived during our 31 years of marriage. It made me feel good. It sounded like it really was good, and it was good, I suppose. But during those 30-some years, everything was going well, and I probably on the average made as much as what judges would make. So it worked out well. My wife and I, when we got married, she had three children, and I had two, and we both had custody of them. So right from the get-go, we started out with five children. They're almost a year apart, the oldest being 14, the youngest being about 11. And then nine months later, we had our first daughter, and then nine years later, we had two more children. So we raised a total of eight children, and all five of my daughters have gone to college. The last two will both be seniors next year, this coming year. So theoretically, I'll be through with the education cost. But as I told Mr. Costello, that's the next blessing, because they'll graduate. But they're smart girls, and they want to go to graduate school, and I want them to go to school. In any event, I think that the judge was misled or saw that we lived well during the marriage, and his thought was my wife should enjoy a high degree of comfort as a single person, which I agree. But the income situation has changed dramatically in the last few years, and I presented evidence that, of course, the suspension for six months was a devastating blow to my reputation. It definitely hurt my ability to acquire new clients, and it continues to dog me to this day, and it's very difficult. I also pointed out that I had health problems, which when I look back at it, I think the judge felt annoyed because the judge was in a wheelchair himself, and I look pretty good compared to him, and I am. I have all pierces, but nonetheless, I have been diagnosed with a heart disease. My blood flows about 60 to 70 percent only. It's not bad enough to put in stents, so I'm on blood thinner, but it robs me of my energy, I got less blood flowing. I have sleep apnea, very bad in the case of that. I don't get a good night's sleep ever. Tests show that I wake up like 80 to 90 times per night. Tested at Memorial Hospital the last couple of years, but the worst ailment is hearing loss. We're hearing aids, and it is a real challenge to hear what goes on in court, especially if some of the high-pitched women's voices are just, sometimes I act inappropriately because I didn't hear the whole situation. In Morton County, they've accommodated me, and they speak louder and all that, but anyway, it is a problem, but beyond that, I mean, I can work and enjoy working, want to work, love the practice of law. So, as I said, the issue is pretty simple. If you look at the numbers, decreased earnings, it simply doesn't justify a $3,250 award. On the other hand, my wife, who was very honest in her shoulder, like $1,000 a month, and in fact, it had me through the product of the judge, says, well, I do have something food and gas, but she is a very conservative person, and fortunately, we enjoy continuing relationships. She comes to my house every day, and we enjoy, we get along fine, but the point is that she has about $800 in Social Security, and I've been paying her about $1,200 a month. She has $2,000, and she's living fine. She lives in an apartment in Jacksonville. She's not one to do anything lavish anyway, so her needs are being met, and even though maybe she deserves a higher style of living, I believe she's satisfied, and even if she deserves it, I can't afford it. Due to my age, and I'm now 76 years old, Mr. Costello, make you feel good, he's about 78. By the way, we've known each other since 1973, when Judge Wright appointed Mr. Costello to help me with my first murder case. I was a public defendant in Morgan County, so we've known each other. We've been good friends for a long time. He's been over at my house. I'm his first wife. He's been divorced too. Women can't stand us too long. We don't have a long shelf life, but in any event, the evidence just doesn't justify that award. I hope you will look at the primary evidence that the judge had before him was a 2012 tax return, 2013 tax return, and the first three months of 2014. As to the only other issue, I've argued that the award of attorney's fees and the amount of $5,000 paid to my wife's previous attorney is not justified because I have no ability to pay that, and it's still owed. That's a lesser problem because my wife's prior attorney has filed a memorandum of judgment, which attaches to all real estate we own, and the only real estate we own are two office buildings in Jacksonville, so when they, and my wife gets two-thirds of the equity, so when the property is sold, that attorney's bill will be paid, and so that's a lesser problem. It's going to end up coming out of her share, really, rather than mine because I don't think there'll be anything left. So I would urge you to look at the evidence and understand, as I understand, that the judge got carried away, I presume, with other matters which were in the past. I mean, I've been around a long time, and I have acquired things and enjoyed travel, enjoyed all the family activities, and provided for my family quite well. I've tried very hard not to have any debt on my daughters from college, and that was criticized by the judge, that wife comes first, children second, but it's really her desire, too, to not burden the children with college debts, and so far we're pretty good. The last one, I have about a $10,000 student loan, which actually I got to pay, but so far, if I get through this, all five daughters will not have any student loans, and that's the way I'd like it because I had a lot when I graduated. It took me a good 10 years to pay it. As the president always says, too, he had debts, but again, if there's a choice, I'd rather not have debts, and I was criticized for that by the trial judge. Mr. Kessinger, I didn't take it as a criticism. I thought Judge Maurer said he found it commendable that you were able to do that for your daughters, but at this point now, you know, with your wife having been out of the workforce for so long, I think he felt like the priority needed to be your wife rather than the daughters, especially since they only have one more year to go, or maybe two at the time. I understand that. I took it as his criticism, but perhaps it wasn't meant that way, but that problem's almost gone. The issue, I think, is what do we do the next few years. We're all living longer. I don't know how long I'll be, but my one grandfather lived to be 92, although he had dementia and all that. That's another matter, and my wife, she'll probably live to be in her 80s. Anyway, so that's the issue, and I ask you to look at the evidence, which I think the judge simply ignored. Thank you. Okay, thank you, Mr. Kessinger. Mr. Costello? May it please the Court, Mr. Kessinger, as Mr. Kessinger has said, this is simply a case of numbers. Mr. Kessinger contends that the award was based on speculation, yes, and conjecture of future, and that's not quite the case. That is not the case. Mr. Kessinger earned in 2010, his adjusted gross income was $95,278. In 2009, his adjusted gross income was approximately $80,000. In 2008, his adjusted gross income was $123,000. In 2011, his gross was approximately $200,000 from the practice of law. His adjusted gross in 2012, which is the highest number in the record, is $65,000, and in 2013, his gross receipts were $133,000. But that was the year he was suspended and was out of business for six months. He still grossed $133,000. We believe that the trial court adequately and carefully constructed a maintenance in the ward. Mr. Kessinger himself said that he intends to practice some more time, and that he expects to earn $200,000 approximately a year. That would have been gross, I'm sure. There's no reason to doubt that he's can't do that if he remains practicing law. He's a competent practitioner. He's had an excellent reputation. I'm not sure about his bad reputation from the suspension, but he's back in business. I've observed him in various locales. He's a competent practitioner. He's got to overcome whatever the reason he was suspended for. Given that, I would suggest that he probably can earn again $200,000 based on his track record and based on overcoming being out of the practice six months. In 2014, at the time of the trial, shortly afterwards, he had earned $3,490 net per month. That would have brought him to an approximate gross figure of about $12,500 for the three months. So we're suggesting that Mr. Kessinger is back in business. Now, he has a lifestyle. His wife enjoyed that lifestyle, and she no longer enjoys that lifestyle. She's testified that at some points during the payment of $742 from Social Security a month. Her rent is approximately $550. Now, Mr. Kessinger in his brief has suggested that he offered to hire her as a secretary. She was a very good legal secretary years ago, and she refused. She did not wish to work for Mr. Kessinger again. Now, it's true they intermingle and interact with the family quite a bit, probably, according to Mr. Kessinger, and I don't dispute that. But is she entitled to that amount of maintenance based on the history and what to try to equalize the lifestyle? Now, the court did suggest in the record that he has these automobiles, and Mr. Kessinger has been selling some for the educational purposes of the two daughters. But he still has five or six left. I believe the record suggests that they're worth at least $50,000, these antique automobiles. Mr. Kessinger is a member of the Country Club. We don't dispute or criticize that, except she is not anymore because her membership has gone with the divorce. I believe the court probably suggested they sell the vehicles. But let's get down to the bottom line. Can he afford the maintenance awarded by the trial court, and was it an abuse of discretion? Mr. Kessinger voluntarily took all the property and all the debt that went along with it, but of course, all the debt was incurred because of his ability to purchase the property, etc. We do complain about the financial affidavit. Mr. Kessinger says that his daughter, the one in New York, was married to a very successful, I believe, stockbroker on Wall Street. He became very strapped for money, and the home went into foreclosure, the marital home, which is a very nice home, seven bedrooms and a $100,000 quote, shed or garage where he keeps his cars. They had a pool on the premises, that his daughter purchased the property. Now, Mr. Kessinger alleges that he owes her $150,000 for the marital home. Yet his daughter has loaned him, without notes, $50,000 on one occasion, $40,000 on another occasion, monies during the time of his suspension. We would suggest that based upon the daughter's actions, and there are no notes attached to that money, that that's just a gift. She's not going to collect it, and you wouldn't collect it from your father if, in fact, your father had bailed you out of some situations. So that would drop his evaluation of his negative net worth to a positive net worth, taking out those two things. Now, I believe the court figured the maintenance based on lifestyle to equalize, not, can never equalize the major breadwinner's earnings, but he felt that was an appropriate amount. And based on the numbers, it's not an inappropriate amount. Mr. Kessinger will be well able to pay, if he's rising his income, of a grossing of $200,000 to pay maintenance. They live well, and they were entitled to it, he was earning the money. And now he's got to lower his standard of living and raise his wife's standard of living. I just cannot believe a woman married to a prominent attorney has to live on 700 – disregarding the maintenance paid – $742 a month. Now, I know the guidelines of the statute, which is in effect on maintenance in January 1st, 2015. I don't believe it's retroactive. I don't believe this divorce and maintenance was awarded prior to that statute. But if you view the statute only as a guideline, and taking the statutory factors and the calculations of the new maintenance statute, taking the gross, as you're supposed to, of the person, the payee, the payor, by 30%, then taking the payee, her gross of $742 times 20%, which is deducted, you come to a total of $3,676. Now, that's how close the statute is to what the court awarded. And we would suggest that Mr. Kessinger is well able, as the time progresses, to pay maintenance. Now, if there is a lessening of income down the road, no maintenance award – well, periodic maintenance, and this is what this is – is permanent. Mr. Kessinger can come in and say, hey, I've got a disability that prevents me now. I've been working for a time. My income is dropping like a rock. He may go into the trial court and say, I want a reduction or termination of maintenance because of certain factors. But those factors haven't occurred yet. And if they do, Mr. Kessinger has redress to go to the trial court. Lastly, the award of attorney's fees. She had no money. Her income was $742 a year. And the court rightfully, I believe, awarded the attorney's fees, which were not excessive in this case, of a little under $5,000 to a trial counsel. One last thing. Mrs. Kessinger is looking for employment to offset, as she is obligated by statute, to offset any maintenance award that might be lowered because of her employment by Mr. Kessinger coming into court. But she has done everything she can throughout the marriage. She was the primary caretaker of the children. She worked in his law office. And he also has asked her to live at the marital home with him subsequent to the divorce. She won't do that. In fact, she was living there and she was evicted by Mr. Kessinger's daughter, not her daughter, when they obtained title to the property. And she won't go back, even though it might save both parties some money. She's entitled to her independence. She's not vindictive. And she has a good opinion of Mr. Kessinger, I can say that. And for those reasons, we would suggest that the maintenance award was proper and that the award of attorney's fees to Mr. Page was proper also. Thank you. Thank you, Mr. Costello. Mr. Kessinger, any rebuttal? Do you want to make a rebuttal argument at all? Mr. Costello was not in the trial, so he doesn't know really what the evidence was, except by reading the transcript. But to set the record straight, my daughter, Anne, actually the only attorney to, helped me in 2004. I was having financial trouble then. And over the period of my career, I've had ups and downs. I've never had a steady income. It's just the nature of my practice. I don't have a regular retainer. I think my first ten years, I was a public defender and I had a regular income. But beyond that, no. Anyway, I got into trouble and couldn't make my payments, IRS and all that. And I had two second mortgages on my home and the bank foreclosed on it. And my daughter and son-in-law purchased the property from the second mortgage holder. So it wasn't given to her or anything. They essentially allowed me to live in the house that I had built back in 1973. So they owned the house and I've been trying to pay back the monies. They paid $230,000 for it, so the $130,000 or so is what's still owed. And because I did pay it down, I didn't want them to lose a cent. But I haven't for several years been able to make any debt in the $130,000. So they own it clear. It wasn't a gift or something. They saved me from doing that. So that's the situation. As to the new law, in my brief I just said it's irrelevant to this issue. But since he brings it up, I think Mr. Carcello mischaracterizes the effect it would have. If you take 30% of my 2012 income, that was about $50,000, 30% would be about $15,000 a year, less a little bit my wife was getting for Social Security. So that would only be about $1,200 a month maintenance. If you take 2013, that was a loss, so there would be nothing to be paid. If you take the first three months of 2014, which 30% of $3,500 a month would be less than $1,000 a month, I'd be better off. Now, the problem is that I'm living day-to-day, and if this is not changed, it becomes a serious enforcement problem, which I dread because I don't want to be brought before the trial court and put in jail because I can't make the payments. But anyway, I'm just saying, even if you use that, applying to the facts, not what I might make in the future, maintenance should be $1,200 or so per month, which is what I'm paying. Thank you. Mr. Kessinger, are you receiving Social Security? Yes, I receive about $2,300 per month. I don't see any other questions. Thank you, Mr. Kessinger. We'll take this matter under advisement and be in recess.